# UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

---------------------------------X

SHERREE WATSON,                                   :                    [__ Civ. ____ (___)(___)]

               Plaintiff(s),          :

          v.                              :                    **COMPLAINT**

MONTGOMERY COUNTY, TENNESSEE,      :                    **JURY TRIAL DEMANDED**
CORPORAL RYAN WRIGHT, in his Official
and Individual Capacity
CORPORAL IGNACIO ALEX RIVERA, in his
Official and Individual Capacity
MATTHEW WAYNE CRYSEL, and
KATHERINE CRYSEL, in her Individual
Capacity

              Defendants.          :

---------------------------------X

      PLAINTIFF, by and through her attorneys, B.K. Leonard Law Firm, for her Complaint

against DEFENDANTS, alleges, on knowledge as to her own actions, and otherwise upon

information and belief, as follows:

## PRELIMINARY STATEMENT

      1.     Plaintiff, Ms. Sherree Watson ("Ms. Watson" or "Plaintiff") brings this action

against Mr. Matthew Wayne Crysel ("Mr. Crysel") Tennessee Highway Patrol Trooper Mrs.

Katherine Crysel, ("Mrs. Crysel") (collectively, "the Crysels"), Corporal Ryan Wright ("Cpl.

Wright"). Corporal Ignacio Alex Rivera, ("Cpl. Rivera") (collectively, "the officers") of the

Montgomery County Sheriff's Office ("MCSO"), and Montgomery County, Tennessee ("the

County"), (collectively, "the Defendants") for deprivation of her Constitutional Rights under the

Fourth and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. §

1983, of the Civil Rights Act of 1871, to hold Montgomery County, Tennessee via its policymaker, the Montgomery County Mayor, the Montgomery County Commissioners, and two officers of the MCSO, accountable for their unreasonable, unlawful, malicious violations of the Plaintiff's rights.as well as violation of various state law provisions, including false arrest, abuse of process, negligent infliction of emotional distress, intentional infliction of emotional distress, defamation, negligent retention and supervision, and related laws.

2.      Plaintiff(s) seek(s) compensatory damages and equitable and injunctive relief against Defendants.

## JURISDICTION

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under 42 U.S.C. 1983 of the Civil Rights Act of 1871. This Court also has jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that DEFENDANTS reside in this district, and all defendants reside in Tennessee. In addition, Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

5.      PLAINTIFF is an individual who resides in and is a citizen of the state of Tennessee.

6.      Upon information and belief, DEFENDANT Matthew Crysel, is an individual who resides in the State of Tennessee.

2

7.      Upon information and belief, DEFENDANT Katherine Crysel is an individual who was at all times relevant hereto, employed as a Trooper by the Tennessee Highway Patrol and resides in the State of Tennessee.

8.      Upon information and belief, DEFENDANT Corporal Ryan Wright, is an individual who was at all times relevant hereto, employed by the Montgomery County Sheriff's Office, and who resides in the State of Tennessee.

9.      Upon information and belief, DEFENDANT, Corporal Ignacio Alex Rivera, is an individual who was at all times relevant hereto, employed by the Montgomery County Sheriff's Office, and resides in the State of Tennessee.

10.     Upon information and belief, DEFENDANT Montgomery County, Tennessee is a municipality organized and existing under the laws of the state of Tennessee, that at all times relevant hereto, employed Corporal Ryan Wright and Corporal Ignacio Alex Rivera.

## FACTS

11.     Ms. Watson has endured significant emotional distress and professional harm due to Mr. Crysel's unfounded accusations and retaliatory actions.

12.     On multiple occasions, Mr. Crysel filed false reports, including a workplace harassment complaint and a Department of Veterans Affairs ("VA") Police Report, which have been proven to be baseless following thorough investigations.

13.     These actions have not only tarnished Ms. Watson's reputation but have also led to her wrongful arrest and legal proceedings against her.

14.     The timeline of events clearly demonstrates a pattern of harassment and intimidation.

3

15. All of the actions of the prospective Defendants caused Ms. Watson professional harm, damage to her reputation, and a decrease in her provider rating due to false information posted online about her. Ms. Watson has suffered significant legal and emotional damages.

16. Plaintiff can establish that MCSO, specifically Cpls. Wright and Rivera had a duty to fully investigate the Crysel's allegations against her, and they breached that duty by failing to do so, due to their relationship with the Crysels.

### *Plaintiff's relationship with Defendant Mr. Crysel*

17. On or about August 3, 2017, the Department of Veterans Affairs Tennessee Valley Healthcare System Police Service and the Montgomery County Sheriff's Office enter into a Support Agreement regarding law enforcement cooperation at VA facilities.

18. On or about September 11, 2022, Plaintiff, Ms. Sherree Watson ("Plaintiff or "Ms. Watson") begins employment at the Clarksville VA Clinic.

19. On or about December 9, 2022, Defendant Matthew Crysel ("Mr. Crysel") first pursues Sherree Watson at work, reporting being estranged from hs wife.

20. On or about December 12, 2022, Plaintiff encourages Mr. Crysel to work on his marriage.

21. On or about January 12, 2023, at approximately 9:04 AM, Plaintiff parks in her regular spot at the Clarksville VA CBOC, as evidenced by parking lot images and her statement that she has parked there since starting employment in September 2022.

22. On or about Mid-February 2023, Mr. Crysel pursues Plaintiff a second time after informing her that he and his wife are going to file for divorce.

23. On or about Late February 2023, Plaintiff forms a relationship with her co-worker, Mr. Crysel.

4

24.     On or about April 23, 2023, Defendant, Katherine Crysel ("Mrs. Crysel") interacts with Plaintiff's Facebook account, resulting in her emotional distress.

25.     On or about April 23, 2023, Defendant Mr. Crysel's estranged wife confronted him about his relationship with Plaintiff.

26.     On or about Around April 26, 2023, the relationship between Plaintiff and Defendant Mr. Crysel ends after Defendant Mrs. Crysel attempts to reconcile with her husband.

27.     On or about April 26, 2023, at approximately 3:14 AM, Defendant Mr. Crysel sends a cryptic text message to Plaintiff at 3:14 AM, which she interprets as possibly ending the relationship.

### *Defendants The Crysel's false allegations against Plaintiff*

28.     On or about May 2023 through January 2024, Plaintiff is alleged to have repeatedly harassed, Defendant Mr. Crysel by yelling obscenities at him inside the building and in the parking lot, parking her vehicle outside his office window, and shouting vulgar remarks.

29.     On or about May 2, 2023, Plaintiff receives several text messages from Defendant Mr. Crysel, including instructions to return a ring and responses to her inquiries about unknown calls and potential trouble at work.

30.     On or about May 4, 2023, Defendant Mr. Crysel blocks Sherree Watson's phone number, ending telephone contact between them.

31.     On or about May 9, 2023, Defendant Mr. Crysel tells Plaintiff, "WE ARE DONE," providing a clear statement that the relationship is over.

32.     On or about May 18, 2023, Plaintiff is alleged to have approached Defendant Mr. Crysel at work and yelled at him to "go kill yourself"; this accusation is later found unsubstantiated in a workplace investigation.

5

33.     On or about May 19, 2023, Plaintiff is alleged to have approached Defendant Mr. Crysel at work, yelled at him, and threatened to get him in trouble at work; an audio recording is made, and the incident is later found unsubstantiated in a workplace investigation.

34.     On or about June 23, 2023, Defendant Mrs. Crysel views and screenshots a video posted by Plaintiff on Facebook, which is later included in a complaint.

35.     On or about October 22, 2023, Defendant Mrs. Crysel is alleged to have monitored Plaintiff's LinkedIn profile.

36.     On or about January 9, 2024, Defendant Mrs. Crysel is alleged to have monitored Sherree Watson's LinkedIn profile.

37.     On or about February 15, 2024, Defendant Mr. Crysel alleges that Plaintiff waited outside his workplace, yelled an insult, and nearly struck him with her vehicle; this is later found unsubstantiated by video and workplace investigation.

38.     On or about Around February 16, 2024, at approximately 3:30 PM, Plaintiff provides a witness statement regarding the February 15, 2024 incident, describing her actions while backing out of her parking space and her interaction with Defendant Mr. Crysel.

39.     On or about February 26, 2024 at approximately 10:00 AM, an envelope is delivered to the VA mailroom in Nashville, allegedly containing documents about Plaintiff.

40.     On or about March 12, 2024, Jill Fiala, Chief of Social Work Services, finds the envelope containing a statement and images making allegations against Plaintiff at the VA TVHS Murfreesboro/York campus.

41.     On or about Around March 13, 2024,Plaintiff is informed about the documentation delivered to her workplace.

42. On or about March 18, 2024, Paul Campuzano reviews the scan of the envelope and shares it with materials handlers to identify who processed it.

43. On or about March 18, 2024, VA Criminal Investigator Jonathan Carroll ("Carroll") a criminal investigator, becomes involved in the investigation related to the documentation and complaints.

44. On or about March 20, 2024, Carroll contacts the Tennessee Department of Safety and Homeland Security ("TDSHS") Office of Professional Accountability ("OPA") regarding Defendant Mrs. Crysel's conduct, leading to her being pulled from patrol and placed under investigation.

45. On or about March 20, 2024, at approximately 8:58 AM, Carroll speaks with Plaintiff via Microsoft Teams regarding the incident.

46. On or about March 21, 2024, at approximately 9:00 AM, Assistant Chief Tad Fletcher, Deputy Chief Nicholas Bates, and Carroll brief Lieutenant Jacob Stielow of the Tennessee Department of Safety & Homeland Security, Office of Professional Accountability, about the incident, and the Office agrees to initiate an investigation.

47. On or about March 25, 2024, Plaintiff submits a detailed statement to TDSHS OPA regarding Katherine Crysel.

48. On or about March 25, 2024, Carroll speaks with Plaintiff via Microsoft Teams, and she provides a copy of her statement and the VA Form 119-Report of Contact completed by Thomas Brown.

49. On or about Around March 27, 2024, Defendant Mr. Crysel notifies his supervisor and the VA Police of an incident involving Plaintiff, and files a workplace harassment complaint.

7

50.     On or about March 28, 2024, Defendant Mr. Crysel submits an EEO hostile work environment complaint against Plaintiff, alleging harassment and an incident on February 15, 2024.

51.     On or about March 28, 2024, 9:26 AM, Plaintiff obtains an ex parte Temporary Order of Protection against Defendant Mrs. Crysel, ordered by Magistrate Judge Darlene Sample, with a scheduled court appearance set for April 2, 2024.

52.     On or about March 29, 2024, at approximately 12:41 PM, The VA ORM Harassment Prevention Program receives Defendant Mr. Crysel's complaint of workplace harassment against Sherree Watson.

53.     On or about April 2, 2024, at approximately 9:00 AM, Thomas Brown is subpoenaed to appear as a witness in the case of *Sherree Watson v. Katherine Frances Crysel* in Montgomery General Sessions Court.

54.     On or about April 2, 2024, The VA issues a No Contact Order to Plaintiff, prohibiting contact with Defendant Mr. Crysel.

55.     On or about April 3, 2024, Plaintiff acknowledges receipt of the No Contact Order.

56.     On or about April 3, 2024, at approximately 9:00 AM, James Trull, HR Consultant, contacts Carroll regarding the EEO complaint submitted by Defendant Mr. Crysel against Plaintiff.

57.     On or about April 4, 2024, a No Contact Order is issued by the Clarksville CBOC Supervisory Physical Therapist, prohibiting contact between the recipient and Plaintiff.

58.     On or about April 5, 2024, Lieutenant William Doyle, VA Police, is informed of the allegations made by Defendant Mr. Crysel and states that video surveillance does not substantiate the claim that Plaintiff tried to run over Defendant Mr. Crysel.

59.     On or about April 5, 2024, at approximately 8:00 AM, Defendant Mr. Crysel reports to VA Police an incident that occurred on February 15, 2024, involving Plaintiff.

60.     On or about April 10, 2024, at approximately 3:30 PM, Willette Wade has a conversation with Plaintiff regarding the workplace harassment allegations, during which Plaintiff denies the claim and states it is retaliation due to incidents involving Defendant Mr. Crysel's wife and the filing of a protection order.

61.     On or about Around April 11, 2024,  a hearing is held in the Order of Protection case between Plaintiff and Defendant Mrs. Crysel.

62.     On or about April 11, 2024, Defendant Mr. Crysel testifies in court regarding his allegations against Plaintiff during an Order of Protection hearing.

63.     On or about April 12, 2024, Defendant Mr. Crysel submits responses to the VA Factfinder regarding his workplace harassment complaint.

64.     On or about April 18, 2024, Dr. Todd Tice, Program Manager, confirms that following the Order of Protection hearing, Plaintiff agreed to park further from Defendant Mr. Crysel's office window.

65.     On or about Around April 25, 2024,  Plaintiff continues to park a few spaces down from her regular spot due to the ongoing investigation into the workplace harassment complaint.

66. On or about April 25, 2024, Defendant Mr. Crysel makes an addition to his workplace harassment complaint, alleging that Plaintiff accessed his VA medical records; a privacy office search finds no evidence of access.

67. On or about May 1, 2024, the fact-finding report is signed by Service Chief Erica White, concluding that the allegations of harassment and the parking lot incident are unsubstantiated.

68. On or about Around May 2, 2024, Plaintiff continues to park a couple of spaces down from her regular spot, as the investigation into the workplace harassment complaint is still ongoing.

### *Defendant Mr. Crysel's False Statement/Report to Law Enforcement leading to Plaintiff's False Arrest*

69. On or about May 15, 2024, Defendant Mr. Crysel files an affidavit of complaint for aggravated assault and aggravated stalking against Sherree Watson.

70. On or about May 16, 2024, at approximately12:00 PM, Defendant Mr. Crysel and Defendant Mrs. Crysel report to the Montgomery County Sheriff's Office ("MCSO") to file a report against Plaintiff, resulting in arrest warrants for aggravated assault, aggravated stalking, and harassment.

71. Defendant Mrs. Crysel was personally involved with former Cpl. Wright with whom she was texting Plaintiff's location, her typical parking space, what time she would ordinarily arrive to work, and details of her vehicle.

72. On or about May 16, 2024, through May 16, 2025, the internal investigation into Cpl. Wright covers his conduct from May 16, 2024, to May 16, 2025.

73.     On or about May 21, 2024, at approximately 1:30 PM, a court date is set for Plaintiff on the criminal charges.

74.     On or about May 23, 2024, Plaintiff returns to work at the Clarksville CBOC and resumes parking in her usual spot after the workplace harassment investigation concludes.

75.     On or about June 14, 2024, Plaintiff reports Defendant Mr. Crysel's unauthorized recording to his supervisor, alleging a violation of VA policy.

76.     On or about July 1, 2024, the Order of Protection case filed by Defendant Mr. Crysel against Plaintiff is dismissed.

77.     On or about August 5, 2024,  the VA adds an additional provision to the No Contact Order for Plaintiff's protection, restricting her use of certain hallways at the Clarksville CBOC while litigation is pending.

### *Plaintiff's False Arrest and Dismissal of Charges Against Plaintiff*

78.     On or about October 11, 2024, at approximately 7:20 AM,   Plaintiff is arrested at the Clarksville VA Clinic by MCSO Cpl. Ryan Wright on charges of harassment, aggravated assault, and aggravated stalking, based on warrants issued in May 2024.

79.     On or about October 15, 2024, Defendant Mr. Crysel files for an Order of Protection against Plaintiff in Montgomery County, Tennessee.

80.     On or about October 17, 2024, Plaintiff is served with the Temporary Order of Protection.

81.     On or about October 22, 2024, at approximately 9:00 AM, a hearing is scheduled for the Order of Protection case.

82.     On or about December 13, 2024, at approximately 1:01 PM, the VA ORM Harassment Prevention Program confirms receipt of Defendant Mr. Crysel's complaint on March 29, 2024, at 12:41 PM.

83.     On or about Around January 27, 2025, at approximately 5:03 PM, Plaintiff submits a FOIA request to the VA seeking the exact date and time that Defendant Mr. Crysel filed a workplace harassment complaint against her.

84.     On or about February 4, 2025, a preliminary hearing is held in Montgomery County General Sessions Criminal Court regarding the charges against Plaintiff; the state announces it will not prosecute Plaintiff due to potential misconduct by the alleged victim and his wife, Defendants Mr. and Mrs. Crysel, and the state moves to dismiss the charges of harassment, aggravated assault, and aggravated stalking.

### *Investigations into the Conduct of Defendants, the Crysels, Cpl. Wright, and Cpl. Rivera*

85.     On or about March 3, 2025, Plaintiff provides a voluntary witness statement to the VA regarding the February 16, 2024 incident.

86.     On or about March 11, 2025, Plaintiff speaks to District Attorney Robert Nash about her concerns regarding the conduct of Defendant Mrs. Crysel, Cpl. Rivera, and Cpl. Wright, and requests a TBI investigation.

87.     On or about April 2, 2025, a subpoena is filed for dash cam and body cam footage from the day of Plaintiff's arrest.

88.     On or about April 8, 2025, the Order of Protection hearing for the case filed by Defendant Mr. Crysel against Plaintiff occurs.

89.     On or about April 17, 2025, an appeal is filed in the Order of Protection case against Defendant Mrs. Crysel.

90.    On or about April 23, 2025, a second subpoena is issued for the unredacted dash cam and body cam footage from Cpl. Wright's shift on the day of Plaintiff's arrest.

91.    On or about April 28, 2025, the attorney for MCSO enters a motion to quash the subpoena for dash cam and body cam footage.

92.    May 1, 2025,  Plaintiff is contacted by Lt. Timothy Adair of MCSO Criminal Investigations and Intelligence Bureau regarding her concerns about her arrest and alleged misconduct by MCSO personnel.

93.    On or about May 5, 2025, Plaintiff submits documents and evidence to Lt. Adair and Inv. Knotts regarding her claims of false police reports and misconduct.

94.    On or about May 9, 2025, the motion to quash the subpoena for dash cam and body cam footage is granted, and John Maher's motion to withdraw as counsel is granted.

95.    On or about May 12, 2025, Plaintiff meets with MCSO Inv. Knotts and Inv. Raines to provide copies of affidavits of complaint and other documents for the investigation into Defendant Mr. Crysel.

96.    On or about May 14, 2025, an internal administrative investigation is initiated into Cpl. Ryan Wright regarding his conduct in the arrest of Plaintiff.

97.    On or about May 14, 2025, at approximately 1:53 PM, Cpl. Ignacio Rivera is placed on administrative leave pending an internal investigation into his conduct related to the case involving Plaintiff.

98.    On or about Around May 16, 2025, the internal investigation into Cpl. Rivera's conduct concludes, finding no violation of policy regarding collusion, but finding violations of other policies.

99.     On or about May 28, 2025, Cpl. Ryan Wright ("Cpl. Wright") is placed on paid administrative leave pending the outcome of the administrative process.

100.    On or about Around May 29, 2025, at approximately 11:47 AM, a written reprimand is issued to Cpl. Rivera for violations of the Code of Conduct while on duty.

### *Defendant Mr. Crysel's Indictment and Arrest*

101.    On or about May 30, 2025, Plaintiff is informed by Inv. Knotts that a packet is being prepared for the grand jury regarding her claims against Defendant Mr. Crysel.

102.    On or about July 1, 2025, the Order of Protection case filed by Defendant Mr. Crysel against Plaintiff is dismissed.

103.    On or about August 2025, the grand jury proceedings for the case against Defendant Mr. Crysel are scheduled.

104.    On or about August 5, 2025,  Inv. Knotts presents the case against Defendant Mr. to the Montgomery County grand jury under a sealed indictment, and a True Bill is issued.

105.    On or about August 6, 2025,  A Capias is issued for Defendant Mr. Crysel following the grand jury indictment.

106.    On or about August 15, 2025, 10:57 AM, Defendant Mr. Crysel is arrested at his home and booked into MCSO jail at 10:57 am, then released at 12:22 pm on a $5,000 bond.

107.    On or about August 16, 2025, Plaintiff discovers a negative Healthgrades Provider Profile review referencing her arrest and employment status, resulting in a decrease in her provider rating.

108.    On or about August 20, 2025, Plaintiff receives redacted records from the MCSO public records request regarding the IA investigation into Cpl. Wright.

14

109. On or about September 3, 2025, at approximately 9:00 AM, Defendant Mr. Crysel's arraignment is set in Montgomery County Circuit Court.

110. On or about September 8, 2025, at approximately 9:00 AM, the final hearing for the Order of Protection appeal case against Defendant Mrs. Crysel was set in Montgomery County Circuit Civil Court.

## COUNT ONE
## FALSE ARREST

111. PLAINTIFF repeats and realleges paragraphs 1 through 110 hereof, as if fully set forth herein.

112. Cpl. Rivera of the MCSO received the false report from the Crysels, and he and Cpl. Wright failed to fully investigated the false report.

113. Cpl. Wright arrested Plaintiff, based on the false statements of Mr. Crysel

114. Accordingly, Cpl. Wright of the MCSO, lacked the legal authority or justification in arresting Plaintiff. *See Sullivan v. Young,* 678 S.W.2d 906 (Tenn. Ct. App. 1984).

115. Defendant Montgomery County is liable to Plaintiff by virtue of the ultimate decision-maker, as the Sheriff or County Mayor's ratification of their conduct and their failure to stop or remedy the conduct of Cpts. River and Wright or sufficiently discipline them for the same against the Plaintiff, or that Montgomery County showed deliberate indifference to Cpl. Wright and Cpl. Rivera, based on prior instances of unconstitutional conduct, pursuant to *Miller v. Sanilac County*, 606 F.3d 240 (2010).

116. In addition, by falsely arresting Plaintiff and causing her false arrest, Defendants violated her Fourth Amendment right against unlawful search and seizure made applicable to the

State of Tennessee through the Fourteenth Amendment of the United States Constitution, and violated her rights under Article I, Section 7, of the Tennessee Constitution, against unlawful search and seizure.

117. Accordingly, PLAINTIFF suffered damages because of Defendants' unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

118. Defendants intentionally violated PLAINTIFF's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, and related state law claims, with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT TWO
## FALSE IMPRISONMENT

119. PLAINTIFF repeats and realleges paragraphs 1 through 118 hereof, as if fully set forth herein.

120. Cpl. Rivera of the MCSO received the false report from the Crysels and failed to fully investigate the false report.

121. Cpl. Wright of the MCSO arrested Plaintiff, based on the false statements of Mr. Crysel.

122. Accordingly, Cpl. Wright of the MCSO, Cpl. Wright arrested Plaintiff, based on the false statements of Mr. Crysel

123. Thus, there was a lack of probable cause based on the false statements by Mr. Crysel leading to Plaintiff's detention. *See Brown v. SCOA Industries, Inc.,* 741 S.W.2d 916 (1987).

124.    The Tennessee Court of Appeals has held that malice may be inferred from the absence of probable cause, which can simplify the burden of proof for plaintiffs. *See Lawson v. Wilkinson*, 60 Tenn. App. 406 (1969).

125.    Defendant Montgomery County is liable to Plaintiff by virtue of the ultimate decision-maker, as the Sheriff or County Mayor's ratification of their conduct and their failure to stop or remedy the conduct of Cpts. River and Wright or sufficiently discipline them for the same against the Plaintiff, or that Montgomery County showed deliberate indifference to Cpl. Wright and Cpl. Rivera, based on prior instances of unconstitutional conduct, pursuant to *Miller v. Sanilac County*, 606 F.3d 240 (2010).

126.    In addition, by falsely detaining Plaintiff and causing her false detention, Defendants violated her Fourth Amendment right against unlawful search and seizure made applicable to the State of Tennessee through the Fourteenth Amendment of the United States Constitution, and violated her rights under Article I, Section 7, of the Tennessee Constitution, against unlawful search and seizure.

127.    Accordingly, PLAINTIFF suffered damages because of Defendants' unlawful actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

128.    Defendants intentionally violated PLAINTIFF's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, and related state law claims, with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT THREE
## NEEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

129.    PLAINTIFF repeats and realleges paragraphs 1 through 128, hereof, as if fully set forth herein.

17

130.     MCSO officers, specifically, Cpls. Wright and Rivera had a duty to fully investigate the Crysel's allegations against Plaintiff,

131.     MCSO officers, specifically, Cpls. Wright and Rivera breached that duty by failing to do so, due to their relationship with the Crysels.

132.     As a direct cause of Defendant Crysel's false statements to MCSO officers, specifically, Cpls. Wright and Rivera, this led to Cpl. Wright's arrest of Plaintiff.

133.     As a proximate result of Defendant Crysel's false statements to MCSO officers, specifically, Cpls. Wright and Rivera, this led to Cpl. Wright's false arrest and detention of Plaintiff.

134.     As a result of the actions of the Defendants, Ms. Watson suffered extreme emotional injury. Furthermore, the Defendants' breach of duty actually and proximately caused Ms. Watson, severe emotional distress and mental anguish.

135.     As a result of such emotional distress, Ms. Watson has had to seek the services of healthcare professionals to treat her conditions. . *See Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235 (2015).

136.     Defendant Montgomery County is liable to Plaintiff by virtue of the ultimate decision-maker, as the Sheriff or County Mayor's ratification of their conduct and their failure to stop or remedy the conduct of Cpts. River and Wright or sufficiently discipline them for the same against the Plaintiff, or that Montgomery County showed deliberate indifference to Cpl. Wright and Cpl. Rivera, based on prior instances of unconstitutional conduct, pursuant to *Miller v. Sanilac County*, 606 F.3d 240 (2010).

137. Accordingly, PLAINTIFF suffered damages because of Defendants' unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

138. Defendants intentionally violated PLAINTIFF's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, and related state law claims, with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT FOUR

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

139. PLAINTIFF repeats and realleges paragraphs 1 through 138 hereof, as if fully set forth herein.

140. Defendant Mr. Crysel knowingly made a false statement to MCSO officers, specifically, Cpls. Wright and Rivera, and Defendant Crysel's false statements to MCSO officers, specifically, Cpls. Wright and Rivera, this led to Cpl. Wright's arrest of Plaintiff.

141. Defendants' conduct was intentional or reckless and as a result of the false arrest, detention, and attempted prosecution of Plaintiff.

142. Because Defendants' actions which resulted in the false arrest and detention of Plaintiff, was based on fabricated evidence such conduct was so outrageous that it is not tolerated by civilized society, as indicated by *Stacy v. Clarksville Police Department*, where a federal district court allowed an IIED claim to proceed against an officer who allegedly caused an arrest warrant to be issued without probable cause, noting that the officer's use of his official law enforcement position to 'purposefully [bring] fantom charges against [an] innocent citizen[ ], like the Plaintiff, that on their face have no basis in the law' could constitute outrageous conduct. *See Stacy v. Clarksville Police Department*, 771 F.Supp.3d 1024 (M.D. Tenn. 2025).

143.     In addition, Defendants' conduct resulted in serious mental injury to the Plaintiff. *See Allen v. Lo*, 751 F.Supp.3d 863 (M.D. Tenn. 2024).

144.     Defendant Montgomery County is liable to Plaintiff by virtue of the ultimate decision-maker, as the Sheriff or County Mayor's ratification of their conduct and their failure to stop or remedy the conduct of Cpts. River and Wright or sufficiently discipline them for the same against the Plaintiff, or that Montgomery County showed deliberate indifference to Cpl. Wright and Cpl. Rivera, based on prior instances of unconstitutional conduct, pursuant to *Miller v. Sanilac County*, 606 F.3d 240 (2010).

145.     Accordingly, PLAINTIFF suffered damages because of Defendants' unlawful retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

146.     Defendants intentionally violated PLAINTIFF's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, and related state law claims, with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT FIVE

## NEGLIGENT HIRING, SUPERVISION, OR RETENTION

147.     PLAINTIFF repeats and realleges paragraphs 1 through 146 hereof, as if fully set forth herein.

148.     MCSO officers, specifically, Cpls. Wright and Rivera had a duty to fully investigate the Crysel's allegations against her.

149.     MCSO officers, specifically, Cpls. Wright and Rivera breached that duty by failing to do so, due to their relationship with the Crysels.

20

150.     As a result of the actions of the Defendants, Plaintiff suffered extreme emotional injury, false arrest, false imprisonment, mental anguish, the cost and expense of defending the attempted prosecution of the Plaintiff, and the costs of brining this action.

151.     Defendant Montgomery County ("the County") knew or should have known that MCSO officers, specifically, Cpls. Wright and Rivera, were not fit for their job as officers, as these officers received false statements, failed to fully investigate the same, and proceeded to effect a false arrest of Plaintiff based on the same false statements, due to their relationship with the Crysels.

152.     In addition, the County knew or should have known that MCSO officers, specifically, Cpls. Wright and Rivera, were not fit for their job as officers, as it placed Defendant Cpl. Wright on paid administrative leave and issued a written reprimand to Cpl. Rivera for violations of the Code of Conduct while on duty, based on their conduct involving the Plaintiff. *See White v. Bradley Cnty. Gov't*, 639 S.W.3d 568, 581–82 (Tenn. Ct. App. 2021).

153.     Defendant Montgomery County is liable to Plaintiff by virtue of the ultimate decision-maker, as the Sheriff or County Mayor's ratification of their conduct and their failure to stop or remedy the conduct of Cpts. River and Wright or sufficiently discipline them for the same against the Plaintiff, or that Montgomery County showed deliberate indifference to Cpl. Wright and Cpl. Rivera, based on prior instances of unconstitutional conduct, pursuant to Miller v. Sanilac County, 606 F.3d 240 (2010).

154.     Accordingly, PLAINTIFF suffered damages because of Defendants' unlawful and retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

155.     Defendants intentionally violated PLAINTIFF's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, and related state law claims, with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT SIX

## FALSE LIGHT INVASION OF PRIVACY

156.     PLAINTIFF repeats and realleges paragraphs 1 through 155 hereof, as if fully set forth herein.

157.     The Crysels false statement to MCSO officers, specifically, Cpls. Wright and Rivera, that resulted in Plaintiff's arrest, gave publicity to a matter concerning Plaintiff that placed her before the public: in a false light which was highly offensive to a reasonable person, based on her being falsely arrested and falsely detained, and having to appear in court on the charges that were based on said false statements and report to law enforcement, since they accused Plaintiff of criminal activity which she did not commit;

158.     Accordingly, PLAINTIFF suffered damages because of Defendants' unlawful and retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

159.     Defendants intentionally violated PLAINTIFF's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, and related state law claims, with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT SEVEN

## DEFAMATION

160.     PLAINTIFF repeats and realleges paragraphs 1 through 159 hereof, as if fully set forth herein.

161. Defendant Mr. Crysel knowingly made false statements to law enforcement against Plaintiff and the Defendants the Crysel knowingly made false complaints to the VA and upon information and belief to others, regarding Plaintiff's professional license, State of TN LCSW license number 6122, which combined with Ms. Watson's false arrest, resulted in an investigation with regard to her license.

162. These actions caused further damage to Plaintiff's professional reputation and increase the Defendants' liability to Plaintiff for defamation. *See West v. Media General Convergence, Inc.*, 53 S.W.3d 640 (Tenn. 2001).

163. Accordingly, PLAINTIFF suffered damages because of Defendants' unlawful and retaliatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

164. Defendants intentionally violated PLAINTIFF's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, and related state law claims, with malice or reckless indifference, and, as a result, are liable for punitive damages.

## COUNT EIGHT

## CIVIL CONSPIRACY

165. PLAINTIFF repeats and realleges paragraphs 1 through 164 hereof, as if fully set forth herein.

166. Defendants the Crysels, along with Cpls. Rivera and Wright, had a common design, to wit: to falsely accuse Plaintiff both at work and to have her criminally charged, arrested and attempted to have her prosecuted;

167. Defendants the Crysels, along with Cpls. Rivera and Wright, accomplished this common design by concerted action, by an unlawful purpose via the false report to law

enforcement by Defendant Mr. Crysel, as well as the false EEO report to the VA, the letter by Defendant Mrs. Crysel to Plaintiff's place of employment, which resulted in the receipt of the false report by Cpl. Rivera, and the arrest of Plaintiff by Cpl. Wright.

168.    The false report to law enforcement by Defendant Mr. Crysel, as well as the false EEO report to the VA, the letter by Defendant Mrs. Crysel to Plaintiff's place of employment, which resulted in the receipt of the false report by Cpl. Rivera, and the arrest of Plaintiff by Cpl. Wright, all constitute overt acts in furtherance of the conspiracy, and

169.    Plaintiff suffered an injury to her person and her professional reputation, due to the false arrest, false EEO complaint, false complaint against her professional license, as well as the emotional distress, and the time and expense that Plaintiff has had to expend to overcome the conspiracy by the Defendants.

170.    Accordingly, PLAINTIFF suffered damages because of Defendants' unlawful actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action.

171.    Defendants intentionally violated PLAINTIFF's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, and related state law claims, with malice or reckless indifference, and, as a result, are liable for punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Award Plaintiff for her past and future loss of wages and benefits, plus interest;

B. Award to Plaintiff all costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988(b), incurred in connection with this action;

C. Award to Plaintiff compensatory damages of $2,500,000;

24

D. Award to Plaintiff punitive damages of $5,000,000; and

E. Enjoin Defendants from further violating Plaintiff's rights.

F. Enter an Order declaring that Defendants' conduct was unlawful.

G. Establish a Consent Decree against Defendants and maintain jurisdiction over this action to monitor the status of the Consent Decree.

H. Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all claims properly triable by a jury.

Dated: October 9, 2025

Respectfully submitted,

By: **/s/Brian K. Leonard**
Brian K. Leonard, Esq., LL.M, M.P.S.,
Admitted to U.S. Tax Court, N.C. DRC
Certified Mediator
B.K. Leonard Law Firm
11010 Lake Grove Blvd., Unit 100-425
Morrisville, NC 27560
Telephone: (984) 212-7737
Facsimile: (919) 578-8757
bleonard@civilrightsappellatelawyer.com
State Bar No. 38308
Attorney for Plaintiff