**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **SHERREE WATSON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**MONTGOMERY COUNTY, TENNESSEE, CORPORAL RYAN WRIGHT, in his Official and Individual Capacity CORPORAL IGNACIO ALEX RIVERA, in his Official and Individual Capacity MATTHEW WAYNE CRYSEL, and KATHERINE CRYSEL, in her Individual Capacity,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 3:25-cv-01162**<br>**Judge Aleta A. Trauger** |

**<u>MEMORANDUM</u>**

Plaintiff Sherree Watson brings this lawsuit against Montgomery County, Tennessee ("Montgomery County" or the "County"), two officers employed by the Montgomery County Sheriff's Department ("MCSD"), and two individuals who allegedly orchestrated the wrongful arrest of the plaintiff, Matthew Crysel and his wife Katherine Crysel. The Complaint asserts claims under 42 U.S.C. § 1983 for alleged violations of Watson's constitutional rights and related state law claims. (Doc. No. 1, Compl.) Now before the court are two Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6), filed by Montgomery County (Doc. No. 29) and MCSD officers Ryan Wright and Ignacio Alex Rivera (the "Officer defendants") (Doc. No. 36).

For the reasons set forth herein, the court will grant the motions in part and dismiss with prejudice all claims under § 1983. However, the court will decline to exercise supplemental jurisdiction over the remaining state law claims. The defendants' motions will be denied as moot,

insofar as they seek dismissal of the state law claims under Rule 12(b)(6), and the remainder of the case will be dismissed under 28 U.S.C. 1367(c)(3), without prejudice to the plaintiff's ability to reassert those claims in state court.

## I. LEGAL STANDARD – RULE 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (2007). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

## II. JURISDICTION

Plaintiff Sherree Watson is a citizen and resident of Tennessee, and all of the defendants are likewise alleged to be citizens of Tennessee. (Compl. ¶¶ 5–10.) The court has original jurisdiction over the case the plaintiff's federal claims under 42 U.S.C. § 1983. 28 U.S.C. § 1331. The court has supplemental jurisdiction over the plaintiff's state law claims. *Id.* § 1367(a).

## III. FACTS AND PROCEDURAL HISTORY

### A. Factual Allegations

The plaintiff alleges that she was in an intimate relationship with her co-worker, defendant Matthew Crysel ("M. Crysel"), from approximately late February 2023 through late April 2023, when M. Crysel's wife, defendant Katherine Crysel ("K. Crysel") discovered the relationship.[1] (Compl. ¶¶ 23–27.) Over the course of the year following the termination of their relationship, Watson and M. Crysel engaged in a contentious pattern of lodging and pursuing workplace complaints against each other, with both accusing the other of stalking, harassment, and other inappropriate conduct.[2] The plaintiff obtained an *ex parte* Temporary Order of Protection against K. Crysel in March 2024. According to Watson, all of the Crysels' complaints against her were based on false allegations and were eventually dismissed as unsubstantiated. (*Id.* at 27–67, 76.)

On May 15, 2024, however, M. Crysel filed an affidavit of complaint for aggravated assault and aggravated stalking against Watson with the MCSO. (*Id.* ¶ 69.) On May 16, 2024, the Crysels jointly filed a report with the MCSO against Watson, which "result[ed] in arrest warrants for

[1] The plaintiff alleges that K. Crysel was at all relevant times employed as a State Trooper with the Tennessee Highway Patrol. (Compl. ¶ 7.)

[2] Watson was employed by the "Clarksville VA Clinic." (Compl. ¶ 18.) She alleges that internal workplace investigations into these complaints were conducted by a Department of Veterans Affairs ("VA") criminal investigator, other agents of the VA police, and various agents of the Tennessee Department of Safety & Homeland Security.

aggravated assault, aggravated stalking, and harassment." (*Id.* ¶ 70.) The plaintiff asserts that defendant Rivera "received the false report from the Crysels" and that Rivera and defendant Wright "failed to fully investigate[] the false report." (*Id.* ¶ 112.) Elsewhere in the Complaint, Watson asserts that Rivera and Wright "had a duty to fully investigate the Crysel[s'] allegations against her, and they breached that duty by failing to do so, due to their relationship with the Crysels." (*Id.* ¶ 16; *see also id.* ¶¶ 131, 149, 151.)

The Complaint contains no facts to substantiate the existence of this purported "relationship," except insofar as it asserts that "Defendant Mrs. Crysel was personally involved with former Cpl. Wright with whom she was texting Plaintiff's location, her typical parking space, what time she would ordinarily arrive to work, and details of her vehicle." (*Id.* ¶ 71.) Although the Complaint does not make this clear, the court and the Officer defendants understand the plaintiff to be alleging that K. Crysel provided information to Wright to help facilitate Watson's arrest. (*See* Doc. No. 37 at 4 ("The Complaint also alleges that, in order to find Plaintiff (so he could arrest her), Corporal Wright received certain pertinent, necessary, and customary information from Mrs. Crysel (a fellow law enforcement officer) pertaining to Plaintiff, to include her whereabouts at the time, her typical parking space and usual arrival time at the VA Clinic, and a description of her vehicle." (citing Compl. ¶¶ 7 & 71)).) On October 11, 2024, Watson was arrested on those warrants by defendant Wright, "based on the false statements of Mr. Crysel." (*Id.* ¶¶ 78, 113.) At a preliminary hearing on February 4, 2025 in the Montgomery County General Sessions Criminal Court, the state announced that it would not prosecute Watson "due to potential misconduct by the alleged victim and his wife," and the charges were dismissed upon the state's motion. (*Id.* ¶ 84.)

In March 2025, after dismissal of the charges, Watson met with Montgomery County District Attorney Robert Nash to request a TBI investigation into the actions of K. Crysel, Rivera,

and Wright. (*Id.* ¶ 86.) In May 2025, the MCSO instigated an internal investigation into the plaintiff's "concerns about her arrest and alleged misconduct by MCSO personnel." (*Id.* ¶¶ 92, 96.) On May 14, 2025, Rivera was placed on administrative leave during the pendency of the investigation. (*Id.* ¶ 97.) On May 16, 2025, the investigation into Rivera's conduct concluded with the finding of "no violation of policy regarding collusion, but finding violations of other policies." (*Id.* ¶ 98.) On May 29, 2025, he was issued a "written reprimand . . . for violations of the Code of Conduct while on duty." (*Id.* ¶ 100.) The Complaint does not elaborate on which policies Rivera may have violated. On May 28, 2025, Wright was placed on administrative leave pending the outcome of the administrative process. (*Id.* ¶ 99.) The Complaint does not indicate that he was disciplined as a result of the investigation.

**B. Claims for Relief**

Based on these factual allegations,[3] the plaintiff asserts claims for (1) false arrest, (2) false imprisonment, (3) negligent infliction of emotional distress, (4) intentional infliction of emotional distress, (5) negligent hiring, supervision, or retention, (6) false light invasion of privacy, (7) defamation, and (8) civil conspiracy. (Compl. at 15–23.)

Although the Complaint does not specify the defendants against whom each claim is asserted and uses the term "Defendants" without distinguishing among them, the statements supporting each claim make it fairly clear which defendants are implicated in which counts. For instance, under Counts One and Two, for false arrest and false imprisonment, the plaintiff alleges that defendants Rivera and Wright "received the false report from the Crysels," "failed to fully investigate[] the false report," "arrested Plaintiff, based on the false statements of Mr. Crysel," and "[a]ccordingly, . . . lacked the legal authority or justification in arresting Plaintiff." (*Id.* ¶¶ 112–

[3] The court has omitted reference to the factual allegations that only concern the Crysels.

14.) The Complaint further asserts that Montgomery County is liable "by virtue of the ultimate decision-maker, as the Sheriff or County Mayor's ratification of their conduct and their failure to stop or remedy the conduct of Cpts. River [sic] or Wright or sufficiently discipline them for the same against the Plaintiff, or that Montgomery County showed deliberate indifference to Cpl. Wright and Cpl. Rivera, based on prior instances of unconstitutional conduct." (*Id.* ¶ 115.) The plaintiff does not allege any facts suggesting that the Crysels were "state actors" for purposes of § 1983 when they filed an affidavit of complaint against Watson. Thus, although the Complaint then states that "Defendants" violated the plaintiff's Fourth Amendment right to be free from unlawful search and seizure when they "falsely arrest[ed] her and caus[ed] her false arrest" (*id.* ¶¶ 116, 126), the court construes the § 1983 claims in Counts One and Two as asserted only against the Officer defendants and MCSO, not the Crysels.

Counts Three and Four, for negligent and intentional infliction of emotional distress, appear to be asserted against all defendants (except perhaps K. Crysel, as the Complaint references only the "false statement" to MCSO officers by "Defendant Mr. Crysel" (*id.* ¶ 140; *see also id.* ¶ 132)). Montgomery County, as the only hiring entity named in the Complaint, appears to be the sole defendant targeted by the "negligent hiring, supervision, or retention" claim in Count Five. Count Six, for false light invasion of privacy, asserts that the "Crysels['] false statement to MCSO officers" "placed [Watson] before the public . . . in a false light" and that the Crysels' "false statements and report to law enforcement . . . accus[ing] Plaintiff of criminal activity which she did not commit" resulted in "her being falsely arrested and falsely detained." (*Id.* ¶ 157.) The court construes this claim as asserted against the Crysels only. Likewise, Count Seven, for defamation, is based on the Crysel defendants' knowingly making false statements to the VA and law enforcement. The Complaint does not actually allege that the Officer defendants published

statements about the plaintiff; it alleges that Rivera "received the false report from the Crysels" and that Wright "arrested Plaintiff, based on the false statements of Mr. Crysel." (*Id.* ¶ 112.) Accordingly, the court construes this claim, too, as asserted only against the Crysels. Count Eight, for "civil conspiracy," claims that "the Crysels, along with Cpls. Rivera and Wright, had a common design, to wit: to falsely accuse Plaintiff both at work and to have her criminally charged, arrested and attempted to have her prosecuted." The court construes this claim as asserted against all defendants.

### C. Motions to Dismiss

The Crysel defendants have sought and been granted a stay of these proceedings as to them, pending the final disposition of criminal charges against M. Crysel in the Montgomery County Circuit Court. (*See* Doc. Nos. 17, 25.) Accordingly, they have not answered or otherwise responded to the Complaint.

The matter is not stayed as to the other defendants, however, and Montgomery County and the Officer defendants now seek dismissal of the Complaint as to them (including the claims that, as set forth above, are not actually asserted against them).[4] (Doc. No. 29; *see also* Doc. No. 30, Mem. of Law; Doc. No. 36; *see also* Doc. No. 37, Mem. of Law). The plaintiff opposes both motions (Doc. Nos. 32, 39), and the defendants filed Reply briefs in further support of their motions (Doc. Nos. 39, 40-1).

---

[4] The plaintiff's Responses to the Motions to Dismiss make no effort to clarify what claims are asserted against whom, and she appears to assume, as do the defendants, that all counts are asserted against the moving defendants (except apparently Count Five, for negligent hiring, supervision, or retention, which the parties agree is asserted only against Montgomery County). Watson concedes only that Montgomery County is immune under the Tennessee Governmental Tort Liability Act from liability for intentional infliction of emotional distress, false light invasion of privacy, and defamation. (*See* Doc. No. 32 at 10–11.)

## IV. ANALYSIS

### A. The False Arrest Claims Under § 1983 Against the Officer Defendants

#### *1. False Arrest and False Imprisonment Are a Single Claim.*

As a preliminary matter, the Officer defendants assert that, under federal law, false arrest and false imprisonment are the same claim, so the court should dismiss Count Two (for false imprisonment) as redundant of Count One. (Doc. No. 30 at 13–14.) In response, the plaintiff concedes that "[c]laims of false arrest and false imprisonment under federal law are typically analyzed in identical fashion, with false arrest being considered a species of false imprisonment." (Doc. No. 39 at 8.) She argues, however, that, while false arrest and false imprisonment claims "may overlap in some circumstances," *her* claims are distinct because they may have different accrual dates, different elements, different injuries, and different potential remedies. (*Id.* at 9.) Alternatively, she argues that the court should simply construe the two counts together rather than dismissing one.

The law in this arena is clear. "When a false-imprisonment claim arises out of an alleged false arrest—as it does in this case—those claims are identical, so we will simply refer to those two claims together as a false-arrest claim." *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (citation omitted). This maxim remains true whether the claims are deemed to arise under federal law or state law. *See id.* at 517 ("As under federal law, the claims of false arrest and false imprisonment are the same under Tennessee law when the alleged false imprisonment arises out of an alleged false arrest by a law-enforcement officer." (citation and internal quotation marks omitted)). Moreover, despite the plaintiff's assertions that her claims may have different accrual dates, elements, injuries, and remedies, nothing in the Complaint supports that assertion. She does not allege any continuing detention apart from her initial arrest. The court finds, therefore, that, as in *Weser*, the two claims are "the same." Rather than dismiss one or the other as redundant,

however, the court simply construes the Complaint as asserting a single claim under § 1983 for false arrest in violation of the plaintiff's constitutional rights.

*2. The Official Capacity Claims Are Redundant.*

The Officer defendants are sued in both their individual and their official capacities. (Compl. at 1 (case caption).) It is well established that a suit against a government official in his official capacity is effectively a suit against the government entity he represents. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Petty v. Cnty. of Franklin*, 478 F.3d 341, 349 (6th Cir. 2007), *abrogated on other grounds by Bailey v. City of Ann Arbor*, 860 F.3d 382 (6th Cir. 2017); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The Officer defendants seek dismissal of the official capacity claims against them on this basis.[5]

Although the court has the discretion to construe the official capacity claims as asserted against Montgomery County, in this case, the plaintiff has also sued Montgomery County. Consequently, the court has no reason to construe the official capacity claims against the Officer defendants as asserted against Montgomery County. Instead, the official capacity claims are redundant and unnecessary and will be dismissed on that basis. *Accord, e.g.*, *Foster v. Michigan*, 573 F. App'x 377, 390 (6th Cir. 2014); *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 327 (6th Cir. 2013) (affirming the dismissal of official capacity claims as "superfluous" where the government entity was also named as a defendant).

*3. The Parties' Arguments for Dismissal of the False Arrest Claim*

The Officer defendants argue that the Complaint does not plausibly plead facts that give rise to an inference that they arrested the plaintiff without probable cause. In particular, they

---

[5] The County notes that the official capacity claims are simply claims against the County and elects to treats them as such. (Doc. No. 30 at 3 n.3.)

contend that the bare allegation that the defendants failed to "fully investigate" does not support a claim against them under § 1983. They also characterize the Complaint as impermissibly engaging in "group pleading" without specifying which defendant undertook what action. (*See* Doc. No. 37 at 7–13.)

The plaintiff responds that the Complaint clearly alleges that Rivera "received the false report from the Crysels" and "prepared the arrest warrant," while Wright "served the warrant and took Plaintiff into custody." (Doc. No. 39 at 4.) She also argues that the Complaint "alleges the accusations lacked evidentiary support (including video not substantiating the vehicular assault claim) and that charges were later dismissed, supporting an inference that probable cause was lacking and that reliance on the accusations was unreasonable under the circumstances." (*Id.*) She also asserts that the claim is based on more than "mere negligence or failure to conduct a perfect investigation," insofar as the Complaint "alleges that the Officers deliberately avoided investigating exculpatory evidence due to their relationship with the Crysels, which constitutes deliberate indifference to Plaintiff's constitutional rights." (*Id.* at 5.) While the plaintiff effectively concedes that "the Crysels engaged in falsifying facts to establish probable cause to arrest Plaint[]iff," she argues that the Officer defendants are nonetheless liable because they either "failed to investigate exculpatory evidence that could invalidate the warrant" or "acted with knowledge or at the very least reckless disregard for the truth or falsity of the information provided by the Crysels." (*Id.* at 6, 7.) She also points to the fact that the Officer defendants' actions were later investigated, that they were both placed on administrative leave, and that Rivera was issued a reprimand. (*Id.*)

In their Reply, the Officer defendants argue that the plaintiff cannot avoid dismissal by relying on factual allegations that are not actually found in the Complaint itself. (Doc. No. 40-1 at

1.) They also point out that the fact that the charges were later dismissed does not mean that the underlying arrest was unlawful. (*Id.* at 3 (citing *Gordon v. Clinton Police Dep't*, No. 3:19-cv-496, 2021 WL 1431544, at *3 (E.D. Tenn. Apr. 15, 2021)).) And they argue that the plaintiff's concessions that the Crysels' allegations establish probable cause and that "officers generally have no duty to investigate further once probable cause is established" doom her claim. (*Id.* (quoting Doc. No. 39 at 5).)

*4. The Complaint Fails to State a Colorable False Arrest Claim.*

To avoid dismissal of a false arrest claim under Rule 12(b)(6), a plaintiff "must plausibly allege that [the arrest] was unsupported by probable cause." *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) (citing *Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir. 2003)). In making a probable cause determination, the officer must consider the "totality of the circumstances," taking into account "both the inculpatory *and* exculpatory evidence." *Id.* (emphasis in original) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 318 (6th Cir. 2000)).

Generally, however, "a law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest . . . unless, at the time of the arrest, there is an apparent reason for the officer to believe that the eyewitness was lying, did not accurately describe what he had seen, or was in some fashion mistaken regarding his recollection of the confrontation." *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (citations and internal quotation marks omitted); *Brown v. City of Wyoming*, No. 23-1285, 2024 WL 5040781, at *4 (6th Cir. Dec. 9, 2024). Moreover, "[o]nce probable cause is established, an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Ahlers*, 188 F.3d at 371. Instead, this "duty" is intertwined with the determination of probable cause and the decision to pursue an arrest. *See Gardenhire*, 205 F.3d at 318.

Further, as set forth above, to survive a motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Thus, a complaint must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

In this case, the allegations in Watson's Complaint specifically directed to Rivera and Wright are sparse, to say the least. As indicated above, the plaintiff alleges that M. Crysel filed an affidavit of complaint for aggravated assault and aggravated stalking against Watson on May 15, 2024 and that the Crysels jointly filed a report with the MCSO against Watson on May 16, 2024, which "result[ed] in arrest warrants for aggravated assault, aggravated stalking, and harassment." (Compl. ¶¶ 69, 70.) Under the "Counts" for false arrest and false imprisonment, the plaintiff alleges that Rivera "received the false report from the Crysels" and that Rivera and Wright "failed to fully investigate[] the false report." (*Id.* ¶ 112.) On October 11, 2024, Watson was arrested on those warrants by defendant Wright, "based on the false statements of Mr. Crysel." (Id. ¶¶ 78, 113.)

This is the totality of the factual allegations against Rivera and Wright, not counting the plaintiff's somewhat incoherent allegations regarding her initiation of an administrative investigation into their actions after the charges against her were dismissed. The Complaint does not allege that the arrest warrant failed to establish probable cause, does not allege that the Officer defendants were in possession of information that called the Crysels' veracity into question, and does not allege facts from which it might be inferred that the Officer defendants had any reason to suspect that the Crysels were lying.

Instead, as noted above, the plaintiff concedes in response to the Officer defendants' Motion to Dismiss that the information provided by the Crysels was sufficient to establish probable cause (Doc. No. 39 at 7) and that officers "generally have no duty to investigate further once probable cause is established" (*id.* at 5). To avoid the obvious conclusion to be drawn from these concessions, Watson asserts new facts—specifically that the Officer defendants "ha[d] both inculpatory and exculpatory evidence" but "deliberately ignore[ed] the exculpatory evidence, such as the video footage, due to personal relationships with complainants." (*Id.* at 8.) But these facts—including facts that would establish that the Officer defendants knew about the video tape to which the plaintiff refers or that they had a "personal relationship" with the Crysels—are simply not alleged in the Complaint.[6] The Complaint makes only conclusory assertions as to liability that are not sufficient to state a claim. *Accord Carver v. City of Kalamazoo*, No. 23-1369, 2024 WL 3595965, at *2 (6th Cir. Feb. 14, 2024) (affirming dismissal of Fourth Amendment claims "because [the plaintiff] supported them with only conclusory factual allegations and legal conclusions that the defendants utilized false information or omitted material information, that the warrant application failed to establish probable cause, and that the defendants knew of his innocence"), *cert. denied*, 145 S. Ct. 321 (2024); *see also Willman v. Att'y Gen.*, 972 F.3d 819, 823 (6th Cir. 2020) (explaining that conclusory allegations and legal conclusions masquerading as factual allegations are insufficient to state a claim).

Even accepting as true the plaintiff's (unsupported) assertion that the Officer defendants "failed to fully investigate[] the false report," an inadequate investigation does not, standing alone,

[6] The Complaint refers to a "video and workplace investigation" in the VA's possession (Compl. ¶ 37), but it does not allege that the Officer defendants knew about that video or had access to it at the time of the arrest. The Complaint asserts several times that the Officer defendants "breached" their duty to investigate "due to their relationship with the Crysels" (*see, e.g.*, Compl. ¶¶ 16, 131), but it does not contain facts to substantiate the existence of any type of relationship.

give rise to a claim under § 1983. *See, e.g.*, *Baker-Schneider v. Napoleon*, 769 F. App'x 189, 192 (6th Cir. 2019) ("Mere negligence does not rise to the level of a constitutional violation."); *Seigel v. City of Germantown*, 25 F. App'x 249, 250 (6th Cir. 2001)("[A] finding of incompetent or negligent investigation . . . is insufficient to establish a constitutional violation."); *Ahlers*, 188 F.3d at 373–74 (6th Cir. 1999) (noting that an investigation's "lack of thoroughness might support an inference of negligence, but it does not demonstrate knowing or intentional behavior designed to violate [the plaintiff's] constitutional rights").

The allegations in the Complaint relating to the Officer defendants' actions are too bare-bones to give rise to an inference that their conduct violated the plaintiff's constitutional rights. Counts One and Two against them, construed as a claim under 42 U.S.C. § 1983 for unlawful arrest in violation of the plaintiff's Fourth Amendment rights, will be dismissed for failure to state a claim for which relief may be granted.

**B. Conspiracy Claim Under 42 U.S.C. § 1983**

The Complaint also asserts a "Civil Conspiracy" claim based on allegations that the Crysels, Wright, and Rivera "had a common design, to wit: to falsely accuse Plaintiff both at work and to have her criminally charged, arrested, and attempted to have her prosecuted," that they "accomplished this common design by concerted action," that they committed overt acts in furtherance of this conspiracy, and that the plaintiff was injured thereby. (Compl. ¶¶ 166–69.)

The defendants construe the claim as brought under 42 U.S.C. § 1985(3) and argue that the plaintiff does not allege that she suffered discrimination because of her membership in a protected class. (Doc. No. 30 at 22–23; Doc. No. 37 at 20–21.) They also argue that the Complaint does not allege facts to support the elements of a conspiracy claim. The plaintiff responds that she has adequately alleged a conspiracy under § 1985(3) because, as a woman, she belongs to a protected class and that, in any event, her allegations "satisfy the elements of civil conspiracy under state

law and 42 U.S.C. § 1983, which provides an independent basis for the claim regardless of whether the federal conspiracy claim under § 1985(3) can proceed." (Doc. No. 39 at 15.)

It is unclear to the court why the defendants construe the conspiracy claim under § 1985(3) or why, indeed, the plaintiff acquiesces to that construction. The Complaint does not mention § 1985(3), and, to state a claim under § 1985(3), the plaintiff must plausibly allege "both membership in a protected class and discrimination on account of it." *Ohio ex rel. Moore v. Brahma Inv. Grp., Inc.*, 723 F. App'x 284, 288 (6th Cir. 2018) (quoting *Est. of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010)). The Complaint does not remotely allege that the plaintiff was targeted by the defendants because of her membership in a protected class.

However, it is reasonable to construe the conspiracy claim under § 1983, as the plaintiff argues in the alternative. "A civil conspiracy under § 1983 is 'an agreement between two or more persons to injure another by unlawful action.'" *Marvaso*, 971 F.3d at 606 (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). To survive a motion to dismiss this claim, the Complaint needs to "allege facts that, when accepted as true, would allow a juror to find that '(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused the injury.'" *Id.* (quoting *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014)). While a conspiracy may be proved with circumstantial evidence, "conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.* (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)).

The Complaint in this case alleges no facts to support the existence of a single plan or a conspiratorial objective. Moreover, a conspiracy claim under § 1983 "needs an underlying

constitutional violation." *Price v. Montgomery Cnty.*, 72 F.4th 711, 726 (6th Cir. 2023) (citing *Stricker v. Twp. of Cambridge*, 710 F.3d 350, 365 (6th Cir. 2013)). Having failed to plausibly allege that the Officer defendants violated her constitutional rights, the plaintiff also cannot maintain a conspiracy claim against them. The construed § 1983 civil conspiracy claim against the Officer defendants will be dismissed for failure to state a claim for which relief may be granted.

**C. The § 1983 Claims Against the County**

Because the Complaint fails to state colorable claims under § 1983 against the Officer defendants in their individual capacities for a violation of Watson's constitutional rights, her municipal liability claims against the County are likewise subject to dismissal. *See Carver*, 2024 WL 3595965, at *3 ("[A] plaintiff cannot establish a claim of supervisory or municipal liability without establishing an underlying constitutional violation." (citing *Price*, 72 F.4th at 726)).

Moreover, even if the Complaint did state a colorable claim against the individual officers, the claims against Montgomery County are still subject to dismissal for failure to state a claim. It is well established that a municipality may be liable under § 1983, but such liability "attaches only under a narrow set of circumstances: 'A municipality may not be held liable under § 1983 on a *respondeat superior* theory—in other words, *solely* because it employs a tortfeasor.'" *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014)). "Instead, a plaintiff must show that 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'" *Id.* (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013)). To make this showing, the plaintiff must plausibly allege that the municipality's "policy or custom" caused the violation of her rights. *Id.* (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).

To establish that the municipal defendant had such a policy or custom, the plaintiff may show (or plausibly allege) "(1) the existence of an illegal official policy or legislative enactment;

(2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Id.* (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).

In this case, there are no factual allegations in the fact section of the Complaint concerning Montgomery County. The sole basis for the § 1983 municipal liability claims against it is the following assertion, which is repeated several times in the Complaint:

> Defendant Montgomery County is liable to Plaintiff by virtue of the ultimate decision-maker, as the Sheriff or County Mayor's ratification of their conduct and their failure to stop or remedy the conduct of Cpts. River [sic] and Wright or sufficiently discipline them for the same against the Plaintiff, or that Montgomery County showed deliberate indifference to Cpl. Wright and Cpl. Rivera, based on prior instances of unconstitutional conduct, pursuant to *Miller v. Sanilac County*, 606 F.3d 240 (2010).

(Compl. ¶¶ 115, 125, 136, 144, 153.)[7] In other words, the plaintiff asserts (without alleging *facts*) that some decisionmaker for Montgomery County "ratified" the Officer defendants' actions, failed to stop their conduct, failed to remedy the conduct, did not sufficiently discipline the officers after the conduct, and exhibited deliberate indifference "based on prior instances of unconstitutional conduct." (*See id.*)

As set forth above, however, the municipality's policy or custom must be the "moving force" behind the alleged injury, that is, it must cause the rights violation. *Jackson*, 925 F.3d at 828. The plaintiff here does not actually allege that there *were* any prior instances of unconstitutional conduct of which the County should have been aware. Moreover, the County

[7] The Complaint contains two additional paragraphs concerning Montgomery County in support of the "negligent hiring, supervision, and retention" claim, specifically that Montgomery County "knew or should have known" that the Officer defendants were not fit for their jobs based on the actions they took in this case and the County's investigation of the plaintiff's administrative complaint against them. (Compl. ¶¶ 151–52.)

cannot be charged with failing to stop or remedy conduct of which it was not aware, and, as a matter of logic, any ratification or failure to discipline that took place *after the alleged constitutional violations occurred* cannot be deemed the cause or moving force behind the constitutional violations. *Accord Crabbs v. Pitts*, No. 2:16-cv-387, 2018 WL 3328404, at *13 (S.D. Ohio July 6, 2018) ("Sheriff Martin's 'purported ratification . . . cannot logically be the moving force behind the alleged constitutional violation because it occurred *after* the shooting, and a thing that happens after an event cannot logically be said to have caused the event that preceded it.'" (quoting *Thornton v. City of Columbus*, No. 2:15-CV-1337, 2017 WL 2573252, at *8 (S.D. Ohio June 14, 2017), *aff'd*, 727 F. App'x 829 (6th Cir. 2018)); *Drake v. Montgomery Cnty.*, No. 3:19-cv-01037, 2022 WL 2960762, at *7 (M.D. Tenn. July 26, 2022) ("The mere fact that [the event] may have been subsequently approved by a[n] (alleged) final policymaker does not mean that the final policymaker's ratification was the 'moving force' for the alleged constitutional violation." (collecting cases)).

In sum, the Complaint fails to allege a constitutional violation for which the County could be liable, and, even if it did, it fails to allege facts that support a municipal liability claim under *Monell* against the County.

## V. THE PLAINTIFF'S REQUEST TO AMEND

The plaintiff asks, at the conclusion of her Response to both Motions to Dismiss, that she be given leave to amend her Complaint if the court finds the factual allegations insufficient. She does not suggest what additional facts she might add; she has not actually moved to amend, and she has not filed a proposed amended pleading. Rule 15(a) provided her the option of filing an amended pleading in response to the Motions to Dismiss. Fed. R. Civ. P. 15(a)(1)(B). She did not take that course. The court declines to consider such an unsupported request in a vacuum.

## VI. SUPPLEMENTAL JURISDICTION

The court has concluded that the federal claims against Montgomery County and the Officer defendants must be dismissed for failure to state a claim. What remains are the claims against them for negligent and intentional infliction of emotional distress and negligent hiring, supervision and retention (against the County), as well as false arrest/imprisonment and civil conspiracy claims under Tennessee law. As already discussed above, the Complaint does not assert federal claims against the Crysels. In other words, only state law claims over which the court may exercise supplemental jurisdiction remain.

Where a district court dismisses all of the claims over which it has original jurisdiction, the court may decline to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3). The decision whether to exercise supplemental jurisdiction over a claim is purely discretionary. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). "Both federal statutory provisions and [Sixth Circuit] precedent not only permit but encourage district courts to decline to exercise supplemental jurisdiction over state law claims that are left without an anchor when their associated federal claims are dismissed." *Lyndon's LLC v. City of Detroit*, No. 23-1895, 2024 WL 3427176, at *3 (6th Cir. July 16, 2024) (citing 28 U.S.C. § 1367; *Packard v. Farmers Ins. Co. of Columbus Inc.*, 423 F. App'x 580, 584 (6th Cir. 2011); *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002)). While the exercise of the court's discretion is guided by such factors as "judicial economy, convenience, fairness, and comity," when all federal claims are dismissed early in the proceedings, as here, "the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996), *amended on denial of reh'g*, No. 95-5120, 1998 WL 117980 (6th Cir. Jan. 15, 1998); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law

claims. . . . Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (citations and internal quotation marks omitted)).

Having dismissed all of plaintiffs' federal claims at this early stage of the litigation, the court declines to exercise supplemental jurisdiction over Watson's remaining state law claims. As a result, the defendants' Motions to Dismiss, insofar as they seek dismissal of the state law claims under Rule 12(b)(6), will be denied as moot.

## VII. CONCLUSION

As set forth herein, the Motions to Dismiss (Doc. Nos. 29, and 36) will be granted in part and denied in part as moot. The plaintiff's claims under 42 U.S.C. § 1983 (false arrest/imprisonment in violation of the Fourth Amendment and conspiracy to violate constitutional rights) will be dismissed with prejudice. The court declines to exercise supplemental jurisdiction over the remaining state law claims, and the Motions to Dismiss will be denied as moot as to those claims. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge